# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 156

### OCTOBER TERM, A.D. 2015

### December 16, 2015

ELTON HENRY,

Appellant
(Defendant),

v.

S-15-0102

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
The Honorable Catherine R. Rogers, Judge

*Representing Appellant:*
Office of the Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; and David E. Westling, Senior Assistant Appellate Counsel.

*Representing Appellee:*
Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Joshua C. Eames, Assistant Attorney General.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KAUTZ, Justice.**

[¶1]    Pursuant to a plea agreement with the State of Wyoming, Elton Henry pleaded no contest to one count of first degree sexual abuse of a minor and one count of second degree sexual abuse of a minor, both felonies.  He challenges his convictions on appeal, claiming the district court did not properly advise him that his future employment opportunities could be affected by loss of the privilege to possess firearms.  We conclude he waived his right to appeal this issue in his plea agreement and, in any event, the district court's advisement was sufficient.

[¶2]    We affirm.

## ISSUES

[¶3]    Mr. Henry presents the following issue on appeal:

> I.  Did the trial court commit reversible error by failing to advise Mr. Henry of his rights as required by W.S. § 7-11-507?

The State raises an additional issue, which we rephrase:

> I.      Did Mr. Henry waive his right to appeal a claimed error in advisements in his plea agreement?

## FACTS

[¶4]    The underlying facts of this case are not directly relevant to the issues on appeal.  In summary, the State charged Mr. Henry with nine felony counts of sexual abuse of his two young grandchildren.  The State and Mr. Henry entered into a written plea agreement in which he pleaded no contest to one count of first degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-314(a)(i) (LexisNexis 2015)[1] and one count of second degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-315(a)(ii) (LexisNexis 2015),[2] and

---

[1] Section 6-2-314 states in relevant part:

> (a) An actor commits the crime of sexual abuse of a minor in the first degree if:
>    (i) Being sixteen (16) years of age or older, the actor inflicts sexual intrusion on a victim who is less than thirteen (13) years of age[.]

[2] Section 6-2-315 states in relevant part:

> (a) Except under circumstance constituting sexual abuse of a minor in the first degree as defined by W.S. 6-2-314, an actor commits the crime of sexual abuse of a minor in the second degree if:

1

the State dismissed the other charges. The plea agreement also contained a specific waiver of Mr. Henry's rights to appeal and to object to the agreement, his pleas, and his convictions.

[¶5] Prior to accepting his no contest pleas, the district court advised Mr. Henry in open court that the legal consequences of pleading no contest were the same as pleading guilty. The court also explained:

> THE COURT: There are a number of important consequences that result from pleading guilty to a felony. A felony conviction may deprive you of certain rights, such as the right to vote, to hold public office, or sit on a jury, and could affect you ability to obtain certain employment or licenses.
>
> A felony conviction may affect your right to own or possess firearms or explosive devices. You should assume that you may never be allowed to have a gun.

[¶6] At sentencing, the district court rejected Mr. Henry's request for a suspended sentence. It ordered him to serve twenty-five to thirty years in prison on the first degree conviction and eighteen to twenty years in prison on the second degree conviction, with the terms to run concurrently. Mr. Henry filed a timely notice of appeal.

## DISCUSSION

### 1. General Law on the Firearms Advisement

[¶7] Mr. Henry claims his convictions are invalid because the district court failed to comply with Wyo. Stat. Ann. § 7-11-507 (LexisNexis 2015). That statute states:

> (a) No judgment of conviction shall be entered upon a plea of guilty or nolo contendere to any charge which may result in the disqualification of the defendant to possess firearms pursuant to the provisions of 18 U.S.C. §§ 922(g)(1), (9) and

---

> . . . .
>
> (ii) Being sixteen (16) years of age or older, the actor engages in sexual contact of a victim who is less than thirteen (13) years of age[.]

2

924(a)(2) or other federal law unless the defendant was advised in open court by the judge:

(i) Of the collateral consequences that may arise from that conviction pursuant to the provisions of 18 U.S.C. §§ 921(a)(33), 922(g)(1), (9) and 924(a)(2); and

(ii) That if the defendant is a peace officer, member of the armed forces, hunting guide, security guard or engaged in any other profession or occupation requiring the carrying or possession of a firearm, that he may now, or in the future, lose the right to engage in that profession or occupation should he be convicted.

[¶8]    We first addressed the requirements of § 7-11-507 in *Starrett v. State,* 2012 WY 133, 286 P.3d 1033 (Wyo. 2012).  In that case, the district court failed to advise the defendant under the statute when it entered judgment on his guilty plea to third degree sexual abuse of a minor. *Id., ¶* 2, 286 P.3d at 1034-35.  We concluded the notifications under § 7-11-507 were required by the law and the district court violated the requirements of W.R.Cr.P. 32(b)(1)(E)[3] by failing to give them. *Id., ¶¶* 11-12, 286 P.3d at 1037-38.  Our ruling was recapped at the end of the opinion as follows:

[W]e must apply our de novo standard of review to the issue before us because that issue requires our interpretation and application of a statute. We hold that Wyo. Stat. Ann. § 7–11–507 is clear and unambiguous; therefore, we must simply give effect to its plain meaning. We hold that, because the legislature has used the word "shall" in its language, "[n]o judgment of conviction shall be entered upon a plea of guilty ... unless the defendant was advised in open court by the judge," this Court accepts the provision as mandatory and has no right to make the law contrary to what the legislature prescribed. The word "shall" in this statute intimates an absence of discretion. The advisement in Wyo. Stat. Ann. § 7–11–507 is required, and W.R.Cr.P. 32(b)(1)(E) mandates that

---

[3] Rule 32 states in relevant part:

(b) *Judgment. –*
(1) . . . [J]udgment of conviction upon a plea of guilty or nolo contendere shall include:
. . . .
(E) Any other advisements required by law or that the court deems appropriate.

3

the judgment of conviction upon Starrett's plea of guilty must include that advisement. The district court's failure to give Starrett that required advisement was a Rule 32 error. Consistent with our precedent dealing with Rule 32 error, we hold that the district court's failure to include in Starrett's judgment of conviction upon his plea of guilty the advisement required by Wyo. Stat. Ann. § 7–11–507 requires us to set aside Starrett's judgment of conviction and remand to that court with directions that he be permitted to plead anew.

*Id.,* ¶ 19, 286 P.3d at 1040.

[¶9]   In *Balderson v. State,* 2013 WY 107, ¶ 14, 309 P.3d 809, 812 (Wyo. 2013), we explained there are two distinct advisements required by § 7-11-507.  Subsection (a)(i) requires the district court to advise a defendant pleading guilty or no contest to a felony of possible disqualification from possessing firearms under federal law, and subsection (a)(ii) requires notification that loss of the firearm privilege may affect the defendant's employment opportunities.  *Id.*  *See also Parks v. State,* 2014 WY 57, 325 P.3d 915 (Wyo. 2014); *Cobb v. State,* 2013 WY 142, 312 P.3d 827 (Wyo. 2013); *Pedraza v. State,* 2014 WY 24, 318 P.3d 812 (Wyo. 2014).  The advisements are necessary to ensure the defendant enters his plea with knowledge of all potential consequences, and the failure to give them will result in reversal of the convictions.  *Balderson,* ¶¶ 22, 25, 309 P.3d at 814.

[¶10]  Furthermore, the advisements are compulsory even though the defendant may not actually be affected by the particular consequences.  In *McEwan v. State,* 2013 WY 158, ¶ 19, 314 P.3d 1160, 1166 (Wyo. 2013), we reversed the defendant's conviction because she was not given the firearms advisements when she pleaded guilty to obtaining welfare benefits by misrepresentation.  The Court reached that conclusion even though Ms. McEwan had previously lost her firearms privileges as the result of a felony conviction and "she was not employed in an occupation that required her to carry a firearm, and we ha[d] no reason to believe that she [had or ever would] have aspirations to obtain such a job." *Id.*

### 2.  Waiver

[¶11]  The State claims Mr. Henry waived, in his plea agreement, the right to appeal the district court's failure to give the firearms advisement.  In *Bush v. State,* 2003 WY 156, ¶ 6, 79 P.3d 1178, 1181 (Wyo. 2003), we stated that "a defendant may waive his right to appeal, so long as that waiver is knowing and voluntary."  *See also United States v. Hernandez,* 134 F.3d 1435, 1437 (10th Cir. 1998).  In other cases, however, we have noted the waiver of the right to appeal has limited application when the district court's

alleged error undermines the validity of the guilty plea itself. *See Noel v. State,* 2014 WY 30, ¶ 16, 319 P.3d 134, 141-42 (Wyo. 2014).

[¶12]  In *United States v. Hahn,* 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam), the United States Court of Appeals for the Tenth Circuit adopted a three-part test to determine whether a waiver of the right to appeal is enforceable in a given case. Under the test, the appellate court determines:

> (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice[.]

*Id.*  By ensuring the waiver is knowing and voluntary and does not result in a miscarriage of justice, the *Hahn* test protects against the concerns voiced in *Noel.*

[¶13]  Under the first element of the *Hahn* test, we must determine the scope of Mr. Henry's waiver of his right to appeal. We review plea agreements *de novo* and interpret them using general contract principles. *Schade v. State,* 2002 WY 133, ¶ 5, 53 P.3d 551, 554 (Wyo. 2002)*; Noel* ¶ 17, 319 P.3d at 142. Ambiguities in a waiver of appellate rights will be interpreted against the State; however, a defendant will be held to the clear terms of a lawful plea agreement. *Hahn,* 359 F.3d at 1325, 1328.

[¶14]  In Wyoming, questions about the meaning of a plea agreement have typically arisen in the context of a defendant's claim that the State breached the terms of the agreement. *Schade, supra*. *See also Fernandez v. State,* 2006 WY 8, 126 P.3d 111 (Wyo. 2006). However, *Knox v. State,* 848 P.2d 1354 (Wyo. 1993), addressed whether the defendant waived the right to claim a violation of the Interstate Agreement on Detainers Act (IAD) when he entered his guilty plea. There was apparently no written plea agreement but, after reviewing the agreement as recited by the parties at the change of plea and sentencing hearings, we concluded Mr. Knox had not waived that right. *Id.* at 1356-58.

[¶15]  In the case at bar, the scope of Mr. Henry's waiver of his rights is set out in the written plea agreement, which states in relevant part:

> THE DEFENDANT agrees and understands that by entering this agreement and by entering the above plea(s) that the Defendant is giving up . . . the right to appeal any charges, means by which evidence/statements were obtained, and defects in charging documents or jurisdiction. By entering this plea(s) the Defendant represents to the Court and agrees

that this agreement is being done knowingly and voluntarily. . . . The Defendant understands that this plea(s) may result in negative consequences regarding the ability to own or possess a firearm. . . . By entering this plea(s) the defendant waives any future objection to this agreement, plea(s) and conviction(s) due to the effects this matter has upon any rights mentioned herein. Further, the Defendant gives up the right to appeal any terms or conditions expressly stated as part of this agreement.

[¶16] The scope of the waiver was extensive. The waiver language in the plea agreement included relinquishment of his right to appeal and any objections to the "[plea] agreement, plea(s) and convictions." This language plainly foreclosed objections on appeal about the procedures used by the district court in accepting his pleas and entering the convictions. The advisements required under § 7-11-507 are part of the procedures for entering convictions on felony pleas.

[¶17] The waiver also specifically included notification of possible negative consequences of the pleas on his right to possess firearms. This Court has recognized and enforced specific waivers included in plea agreements in past cases. In *Beck v. State,* 2005 WY 56, ¶ 12, 110 P.3d 898, 901 (Wyo. 2005), we upheld the defendant's express waiver of the right to argue his convictions merged for purposes of sentencing. We said: "A criminal defendant may waive any personal right 'so long as there is no violation of public policy[,] . . . the public's interests are not thereby jeopardized[,]'" and the waiver is "knowingly and intelligently given." *Id., quoting Meerscheidt v. State,* 931 P.2d 220, 225 (Wyo. 1997). Similarly, in *United States v. Ruiz,* 536 U.S. 622, 628-33, 122 S. Ct. 2450, 153 L. Ed. 2d 586 (2002), the United States Supreme Court upheld a defendant's waiver in her plea agreement of the right to receive impeachment evidence from the government. Clearly, Mr. Henry's waiver included any objection to the sufficiency of the firearms advisements under § 7-11-507.

[¶18] Under the second element of the *Hahn* test, we consider whether the waiver was knowing and voluntary. The *Hahn* court identified two factors to determine whether the appellate waiver was knowing and voluntary. "First, we examine whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily. Second, we look for an adequate . . . Rule of Criminal Procedure 11 colloquy." *Hahn,* 359 F.3d at 1325 (citations omitted). With regard to the first inquiry, the plea agreement contained the following statement: "By entering this plea(s) the Defendant represents to the Court and agrees that this agreement is being done knowingly and voluntarily." At the Change of Plea hearing, Mr. Henry acknowledged that he had read and understood the terms of the plea agreement:

6

THE COURT: With respect to the agreement itself, did you read it?

THE DEFENDANT: Oh, several times.

THE COURT: And did you sign it?

THE DEFENDANT: Yes, ma'am.

THE COURT: This is your signature I see on the third page?

THE DEFENDANT: Yes, ma'am.

THE COURT: Did you review it, before signing it, with [defense counsel]? Before you signed, did you have an opportunity to speak with [defense counsel]?

THE DEFENDANT: Yes, ma'am.

THE COURT: And did you have an opportunity to ask him any questions you may have had regarding the agreement?

THE DEFENDANT: Yes, ma'am.

THE COURT: And did he answer those questions to your satisfaction?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you satisfied with [defense counsel's] representation of you?

THE DEFENDANT: Definitely, ma'am.

THE COURT: Did anyone force you to sign the plea agreement?

THE DEFENDANT: No, ma'am.

THE COURT: Did you do it voluntarily?

7

THE DEFENDANT: Yes, ma'am.

THE COURT: And you understand it, correct?

THE DEFENDANT: Yes, ma'am.

As this colloquy demonstrates, Mr. Henry repeatedly stated that he had read and understood the terms of the agreement.

[¶19] We would next consider whether the district court complied with W.R.Cr.P. 11. However, Mr. Henry does not claim on appeal that his pleas were not entered knowingly and voluntarily or otherwise in violation of W.R.Cr.P. 11. Thus, the second element of the *Hahn* test is satisfied.

[¶20] The final *Hahn* element is whether enforcement of the waiver would result in a miscarriage of justice. The factors considered in determining if there is a miscarriage of justice were set forth in *United States v. Elliott,* 264 F.3d 1171, 1173 (10th Cir. 2001):

> Appellate waivers are subject to certain exceptions, including [1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.

To warrant relief under the fourth factor, the error must seriously undermine the fairness, integrity or public reputation of judicial proceedings. *Hahn,* 359 F.3d at 1327, citing *United States v. Olano,* 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993).

[¶21] In the case at bar, there are no assertions that the district court relied on race or any other improper factor, Mr. Henry received ineffective assistance of counsel in the negotiation of the plea agreement, or that his sentence exceeded the statutory maximum. Moreover, there is no showing that the waiver was otherwise unlawful. Mr. Henry's waiver of his rights to appeal and any objections to his convictions, together with the express reference to the firearms advisement, were more detailed than a typical waiver of the right to appeal. Mr. Henry received generous consideration for his pleas and the waiver of his rights when the State agreed to dismiss seven of the nine felony child sex abuse charges against him. Enforcement of the waiver of the right to be advised that there may be employment consequences associated with the loss of firearms privileges would not result in a miscarriage of justice. Given all of the elements of the *Hahn* test are satisfied in this case, we conclude Mr. Henry waived his right to appeal the sufficiency of the firearms advisement.

8

### 3. *Sufficiency of Firearms Advisement*

[¶22]  Dismissal of the appeal is the typical remedy when a defendant waives his right to appeal.  *Hahn,* 359 F.3d at 1328.  Nevertheless, in the interest of completeness, we will briefly address the sufficiency of the district court's advisements under the statute.  As noted above, our precedent has interpreted § 7-11-507(a) as requiring two advisements: 1) the possibility of disqualification from possessing firearms under federal law; and, 2) the possibility that loss of the firearm privilege may affect a defendant's employment opportunities.  Mr. Henry concedes he was notified about the possible loss of his firearms privilege but claims he was not advised of the possible employment consequences.  The record from the change of plea hearing shows otherwise.  The district court told Mr. Henry:

> There are a number of important consequences that result from pleading guilty to a felony.  A felony conviction may deprive you of certain rights, such as the right to vote, to hold public office, or sit on a jury, and could affect your ability to obtain certain employment or licenses.
>
> A felony conviction may affect your right to own or possess firearms or explosive devices.  You should assume that you may never be allowed to have a gun.

[¶23]  Obviously, the district court did not advise Mr. Henry word for word from the statute and the advisement was a bit confusing because it referred to the employment consequences of his convictions before telling him of the possibility of losing the firearm privilege.  However, prior to the change of plea hearing, Mr. Henry had been advised of the firearms consequences of his convictions in the plea agreement, which he stated he had read and understood.  Common sense would have told him that the employment consequences referred to by the district court at the change of plea hearing could be associated with his loss of firearms privileges.

[¶24]  While our precedent is clear that the advisements are compulsory, we have not required the district courts to recite them verbatim from the statute.  *See, e.g., Parks, Cobb, Pedazra, supra* (stating district courts' advisements that the defendants could lose the "right to own and possess certain types of weapons," "the right to possess firearms under federal law," or "your right to bear arms by federal law" likely satisfied § 7-11-507(a)(i)).  The district court's firearms advisement in this case was sufficient to satisfy the requirements of § 7-11-507(a).

[¶25]  Affirmed.